UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MELVIN RUSH                                                                              PLAINTIFF

V.                                              CIVIL ACTION NO. 3:17-CV-915-DPJ-FKB

STIHL, INC., ET AL.                                                                  DEFENDANTS

ORDER

Plaintiff Melvin Rush sued several STIHL entities in this products-liability case involving a 26-year-old chainsaw that allegedly exploded while he was using it. The STIHL entities are part of a family of companies that perform various tasks in the design, manufacture, distribution, and sale of STIHL-branded products, such as the subject chainsaw. For the second time in this case, four of those defendants challenge personal jurisdiction: ANDREAS STIHL AG ("ANDREAS STIHL"), STIHL Holding AG ("STIHL Holding"), STIHL AG, and STIHL International GMBH ("STIHL International").[1]

This Order addresses those motions to dismiss and eight related motions. For the following reasons, ANDREAS STIHL's motion to dismiss [102] is denied without prejudice, and the German Defendants' motion to dismiss [104] is granted. Rush's motion for jurisdictional discovery as to ANDREAS STIHL [121] is granted; his motion for discovery as to all moving Defendants [124] is granted to the extent it too seeks discovery from ANDREAS STIHL but is otherwise denied. Defendants' motion to stay [107] is denied as moot. Rush's motion for leave to file a sur-reply [139] is denied. Rush's motions to file restricted-status attachments [134, 141] are granted. The remaining motions to file under restricted status [130, 132] are denied as moot.

---

[1] STIHL Holding, STIHL AG, and STIHL International jointly filed their motion to dismiss. For convenience, these three entities will collectively be referred to as "the German Defendants."

I.      Background

The injuries in this case are horrific. In May 2017, Rush suffered third-degree burns over most of his body after the STIHL-brand chainsaw he was using allegedly exploded. Pl.'s 2d Am. Compl. ("SAC") [91] ¶ 21. Approximately six months later, Rush filed suit in state court, and Defendant STIHL, Inc., removed the case to this Court. The Court denied Rush's remand motion and determined that Rush made a *prima facie* showing of personal jurisdiction over STIHL, Inc. *See* Order [28] at 5, 9.

Now, ANDREAS STIHL and the German Defendants seek dismissal claiming lack of personal jurisdiction. Rush says he has made a preliminary showing of personal jurisdiction and requests jurisdictional discovery to "more fully develop[ the] evidentiary record[.]" Pl.'s Resp. [120] at 1. Specifically, Rush argues that the SAC is sufficient because he alleges that the entities were all involved in some way in designing, manufacturing, distributing, or selling the chainsaw. Alternatively, Rush relies on an "alter ego" theory. *See* SAC [91] ¶¶ 9–16.

II.     Motions to Dismiss

ANDREAS STIHL and the German Defendants seek dismissal under Rule 12(b)(2) in separately filed motions. This is the second time these Defendants have challenged personal jurisdiction. The first occurred when Rush sought leave to amend his Complaint and add them as defendants. ANDREAS STIHL and the German Defendants responded in opposition arguing futility for lack of personal jurisdiction. The Court rejected the jurisdictional arguments—as then presented—finding that Rush was at least entitled to discovery.

Although no discovery specific to these Defendants has occurred, they are back asserting the same jurisdictional defense. But this time, they seek dismissal under Rule 12(b)(2), offering different—and frankly better—legal arguments. The scope of review—*i.e.*, what the Court may

consider—is different under Rule 12(b)(2) than under a futility test for Rule 15(a), which applies Rule 12(b)(6).  And under Rule 12(h)(1), Defendants would have waived the personal-jurisdiction issue if not raised by motion or in a responsive pleading to the SAC.  So, despite duplicative efforts, the Court will consider the jurisdictional issues ANDREAS STIHL and the German Defendants now offer.

A.    Standard

"When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant."  *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  If, however, a "district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

In such an analysis, courts must accept the plaintiff's "uncontroverted allegations" as true and resolve any factual conflicts in the plaintiff's favor.  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  Nonetheless, a district court "may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  *Quick Techs., Inc.*, 313 F.3d. at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

Finally, "[t]he prima-facie-case requirement does not require the court to credit conclusory allegations."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Nor may the plaintiff rely on the allegations in a complaint that are

"contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) (holding

that plaintiff failed to make *prima facie* case where defendant presented uncontradicted

affidavits).

B.    Analysis

"Generally, a federal court may assert personal jurisdiction if the state long-arm statute

permits jurisdiction and the exercise of such jurisdiction would not violate due process." *Conn*

*Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019).  Here, ANDREAS STIHL relies

on due process, whereas the German Defendants say Rush fails to meet either test.

This Order focuses on due process and will not address the Mississippi long-arm statute.

Under the due-process prong, courts conduct a three-step analysis, considering:

> (1) whether the defendant has minimum contacts with the forum state, i.e.,
> whether it purposely directed its activities toward the forum state or purposefully
> availed itself of the privileges of conducting activities there; (2) whether the
> plaintiff's cause of action arises out of or results from the defendant's forum-
> related contacts; and (3) whether the exercise of personal jurisdiction is fair and
> reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo*

*Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)).  The analysis here begins

and ends with the minimum-contacts question.

Minimum contacts can give rise to either general or specific personal jurisdiction.  *Wilson*

*v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  Rush asserts only specific jurisdiction based primarily

on the stream-of-commerce test.  He alternatively argues that ANDREAS STIHL and the

German Defendants can be brought into this Court based on "agency, alter ego, and/or successor

[l]iability theories."  Pl.'s Resp. [120] at 19.  This Order first addresses the stream-of-commerce

issue as to each Defendant and then considers the agency, alter-ego, and successor-liability

arguments.

1.      Stream-of-Commerce Theory

"In cases involving a product sold or manufactured by a foreign defendant," the Fifth

Circuit utilizes a "'stream-of-commerce' approach to personal jurisdiction, under which the

minimum contacts requirement is met so long as the court finds that the defendant delivered the

product into the stream of commerce with the expectation that it would be purchased or used by

consumers in the foreign state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir.

2013) (adopting Justice Breyer's concurrence in *J. McIntyre Machinery. Ltd. v. Nicastro*, 564

U.S. 873 (2011), as the appropriate minimum contacts standard).  Such an inquiry "is more

'realistic' than 'mechanical,' turning on matters of 'substance' rather than 'form.'"  *In re Depuy*

*Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018)

(footnotes omitted).[2]

a.      ANDREAS STIHL

ANDREAS STIHL asserts that it merely designed a product that others manufactured and

sold under non-exclusive licensing agreements.  ANDREAS STIHL's Mem. [103] at 3.  Hailing

---

[2] ANDREAS STIHL, as well as the German Defendants, contend that the Supreme Court's
decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017),
abrogated the *Ainsworth* standard.  There, the Court held that California's "sliding scale
approach" to personal jurisdiction was not consistent with the Fourteenth Amendment's due-
process requirement.  *Id.* at 1781, 1783–84.  Defendants ignore a key qualification to the Court's
opinion:  "since our decision concerns the due process limits on the exercise of specific
jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the
same restrictions on the exercise of personal jurisdiction by a federal court."  *Id.* at 1783–84.  "It
has been long established that a legally indistinguishable decision of [the Fifth Circuit] must be
followed by . . . district courts unless overruled *en banc* or by the United States Supreme Court."
*Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).  *Bristol-*
*Myers* did not overrule *Ainsworth*; indeed the Fifth Circuit has applied *Ainsworth* after *Bristol-*
*Myers*.  *See In re DePuy Orthopaedics, Inc.*, 888 F.3d at 779; *see also Scania Boat Serv. of*
*Galveston, Inc. v. NRE Power Sys., Inc.*, No. 17-7210, 2019 WL 6716907, at *7 (E.D. La. Dec.
10, 2019) (rejecting argument that *Bristol-Myers* abrogated *Ainsworth*).  This Court must follow
*Ainsworth* until it is overruled or abrogated.

it into court in Mississippi would therefore violate due process because it never placed this product in the stream of commerce.

In the SAC, Rush offers the following relevant averments regarding ANDREAS STIHL's alleged contacts in Mississippi.

> ANDREAS STIHL AG & Co. KG ("ANDREAS STIHL") is a privately-held company organized and existing under the laws of the Federal Republic of Germany. . . . On information and belief, Defendant ANDREAS STIHL supervises and directs STIHL Subsidiaries and distributors, and designs products exclusively for manufacturing, distribution and sale by STIHL International GmbH, STIHL Holding AG & Co. KG, STIHL, AG, STIHL, Inc. and STIHL Southwest. At all times relevant to this lawsuit, ANDREAS STIHL has conducted business in Kemper County by way of manufacture, design, delivery, and sale of its gas-powered chainsaws to residents of Kemper County, Mississippi, placing these chainsaws into the stream of commerce with the intent that the chainsaws would be sold or used within Mississippi, and thus is subject to personal jurisdiction pursuant to the Mississippi long-arm statute.

SAC [91] ¶ 4.

To begin, these allegations lack underlying factual support and are like the conclusory allegations rejected in *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (finding following averments "conclusory and not entitled to be assumed true": "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [Iqbal]' to harsh conditions of confinement 'as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest,'" and petitioner Ashcroft "was 'instrumental' in adopting and executing" the policy). The Court does not credit conclusory allegations. *Panda Brandywine Corp.*, 253 F.3d at 869.

Rush's jurisdictional averments also conflict with the more precise factual record. It is undisputed that STIHL, Inc., agreed to pay ANDREAS STIHL for the "results of its research and development for STIHL-branded chain saws" so that STIHL, Inc., could manufacture and sell the chainsaws. Strzelczyk Decl. [102-1] ¶ 92. ANDREAS STIHL says STIHL, Inc.,

manufactured the subject chainsaw and either distributed or sold it in the United States. ANDREAS STIHL's Mem. [103] at 5; *see also* Strzelczyk Decl. [102-1] ¶¶ 86, 90, 92, 96; Brandspigel Decl. [102-2] ¶ 71. ANDREAS STIHL also offers unrebutted record evidence that it designed the subject chainsaw in Germany and entered a licensing agreement with STIHL, Inc., in Germany. *See* Strzelczyk Decl. [102-1] ¶¶ 81, 86, 90; Agreement [128-1].[3]

So, the question is whether an entity that designs a product and licenses others to manufacture and sell it places that product in the stream of commerce. It does not. As ANDREAS STIHL notes—without contradiction from Rush—a product *designed* by a foreign defendant is not the same as a "product *sold or manufactured* by a foreign defendant." *Ainsworth*, 716 F.3d at 177 (emphasis added). Indeed, the designer has no finished product to place in the stream of commerce.

This distinguishes *Ainsworth*, Rush's primary authority on the stream-of-commerce theory. *Id.* A closer fit would be *Seiferth*, in which the defendant designed a product in Florida that someone else manufactured in Mississippi and that tragically failed in Mississippi. 472 F.3d at 275. On those facts, the Fifth Circuit held that "[t]he stream-of-commerce theory does not provide a basis for jurisdiction, because [the designer] did not place a product into the stream, but merely licensed a design to [the manufacturer]. The dismissal of Seiferth's defective design claim for lack of personal jurisdiction was proper." *Id.*; *see also Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 253 (5th Cir. 2019) (holding that "something more than a

---

[3] Although Rush questions the nature of this agreement, the document indicates that STIHL, Inc., is selling chainsaws designed by ANDREAS STIHL, that it pays "compensation" in a fixed, per-unit amount to ANDREAS STIHL for that privilege, and that it has purchased access to ANDREAS STIHL's ongoing research and development for chainsaws. Agreement [128-1] at 16–17. Standing alone, the agreement does not contradict the assertion that ANDREAS STIHL designed a chainsaw in Germany that STIHL, Inc., sold under a license agreement signed in Germany. But as discussed below, it gives some weight to Rush's request for discovery.

non-exclusive licensor-licensee relationship is required to support the exercise of personal jurisdiction over the licensor").

Although ANDREAS STIHL did not cite *Seiferth* and relied instead on non-binding authority, it argued that a foreign designer with a non-exclusive licensing agreement is not subject to personal jurisdiction under a stream-of-commerce theory. *See* ANDREAS STIHL's Mem. [103] at 6 (citing *Diece-Lisa Indus., Inc. v. Disney Stores USA, LLC*, No. 2:12-CV-400, 2017 WL 8786932 (E.D. Tex. Dec. 19, 2017); *PrimeSource Bldg. Prods. v. Phillips Screw Co.*, No. 3-07-CV-03030-M, 2008 WL 779906 (N.D. Tex. Mar. 25, 2008)). Rush failed to substantively respond to ANDREAS STIHL's arguments regarding personal jurisdiction for designers who enter licensing agreements in a foreign country.

He does, however, observe—albeit without legal analysis—that ANDREAS STIHL issued express warranties for chainsaws it designed. Specifically, he cites language from ANDREAS STIHL's manual entitled: "ANDREAS STIHL Limited Warranty Federal Emission Control Systems Utility Engines." Warranty [120-2] at 3. That section discusses 1997 EPA regulations and states:

> ANDREAS STIHL warrants to the ultimate purchaser and each subsequent purchaser that your utility equipment engine will be designed, built and equipped, at the time of sale, to meet all applicable regulations. ANDREAS STIHL also warrants to the initial purchaser and each subsequent purchaser that your engine is free from defects in materials and workmanship *which cause the engine to fail to conform with applicable regulations for a period of two years.*

*Id.* (emphasis added). Rush admits that this limited warranty took effect in 1996—two years after the subject chainsaw was manufactured. *See* Pl.'s Resp. [120] at 19.

There is no evidence that this chainsaw had a similar warranty or that the EPA-related warranty is causally connected to Rush's claims in this case. Indeed, the briefing suggests that the parties are still unsure what caused the alleged explosion and fire. *See* ANDREAS STIHL's

Resp. [127] at 1–2; Pl.'s Reply [138] at 2.  Because the record currently fails to show

ANDREAS STIHL placed this product in the stream of commerce, Rush has not made a *prima*

*facie* showing that this Defendant had sufficient minimum contacts to establish personal

jurisdiction in Mississippi.

        b.      STIHL Holding and STIHL AG

It is undisputed that neither STIHL AG nor STIHL Holding existed when the chainsaw at

issue was designed and manufactured.  *See* Defs.' Mem. [105] at 6 (citing Strzelczyk Decl. [104-

1] ¶¶ 27, 42); Pl.'s Resp. [123] at 9; SAC [91] ¶ 26.  Thus, even assuming these entities

manufactured and sold chainsaws at some point—even that is not apparent—they could not have

placed *this* chainsaw in the stream of commerce.  *See Jackson v. Tangolio Giuseppe, S.R.L.*, 615

F.3d 579, 586 (5th Cir. 2010) (finding lack of personal jurisdiction where parent corporation did

not manufacture products until after injury occurred).  STIHL Holding and STIHL AG do not

have minimum contacts with Mississippi in relation to Rush's injury.

Rush nevertheless asserts that STIHL AG and STIHL Holding are liable under a

successor-liability theory.  Pl.'s Resp. [123] at 19–20.  There are two main problems.  First, Rush

lumped this theory into his arguments on agency and alter-ego relationships without specifically

analyzing the distinct legal issues.  *See id.*  This leaves several questions unexplored.  For

starters, there *may* be a choice-of-law issue.  *See Bouchillon v. SAME Deutz-Fahr, Grp.*, 268 F.

Supp. 3d 890, 905 (N.D. Miss. 2017) (holding in products-liability case where personal

jurisdiction was disputed that "German law governs the successor liability issues in this case").

And whatever law applies, Rush failed to explore it beyond generally noting that a predecessor's

contacts can apply to the successor corporation.  *See* Pl.'s Mem. [123] at 19–20 (citing *Patin v.*

*Thoroughbred Power Bds., Inc.*, 294 F.3d 640 (5th Cir. 2002)).

Second, Rush has neither identified the alleged predecessors—assuming there are any—nor demonstrated that those unidentified entities had sufficient minimum contacts in Mississippi. As noted, ANDREAS STIHL designed the chainsaw; STIHL, Inc., manufactured it and sold and/or distributed it. Rush has not, therefore, demonstrated that STIHL AG and STIHL Holding are subject to personal jurisdiction.[4]

c.    STIHL International

Similar to his averments regarding ANDREAS STIHL and the other German Defendants, Rush alleges that STIHL International "directs the activity, manufacturing, and sales of foreign subsidiaries in North America (STIHL, Inc.)[.]" SAC [91] ¶ 7. These assertions—made without factual context—are too conclusory to consider. *Panda Brandywine Corp.*, 253 F.3d at 869.

Even if nonconclusory, the assertions are rebutted. STIHL International's evidence shows that it "did not participate in the design, manufacture, supply, distribution, marketing, sale, or assembly of STIHL 029 chain saws, or the drafting of warnings or instructions for STIHL 029 chain saws." Strzelczyk Decl. [102-1] ¶ 34. And as noted previously, the record instead shows that ANDREAS STIHL designed the chainsaw and STIHL Inc., manufactured and sold or distributed it. There is no evidence that STIHL International, as STIHL, Inc.'s parent company, was involved in this transaction.

Because there is no evidence that STIHL International delivered the chainsaw into the stream of commerce, Rush has failed to establish that it had minimum contacts with Mississippi. *See Jackson*, 615 F.3d at 586 (finding no specific jurisdiction under stream-of-commerce theory

---

[4] Though he mentions the word "successor" once in his SAC, Rush never alleged a successor-liability theory of personal jurisdiction in general or as to any specific Defendant.

where there was no evidence defendant—as opposed to its related corporations—"sold or manufactured" defective product).

### 2. Agency Theory

Rush alternatively asserts that the Court has personal jurisdiction over ANDREAS STIHL and the German Defendants under an agency theory. Pl.'s Resp. [123] at 19–21; SAC [91] ¶ 9. Sure enough, the Supreme Court has recognized that a parent company may be subject to a court's personal jurisdiction "by directing its agents or distributors to take action" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Indeed, the Fifth Circuit permits an agent's forum contacts to be "imputed to the [principal] . . . because of the activities of its agent within the forum state." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) (citing *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009)).

But Defendants correctly say Rush failed to plead sufficient facts showing an agency relationship. *See* Defs.' Reply [126] at 4, 13. As noted before, the Court must reject any conclusory assertions in the SAC and the unsupported factual assertions that Defendants contradict with sworn testimony. *Panda Brandywine Corp.*, 253 F.3d at 869; *see also Wyatt*, 686 F.2d at 283 n.13. That exercise leaves no record evidence suggesting that separate corporate entities with minimum contacts in Mississippi acted as these Defendants' agents.

From a legal standpoint, the Court assumes that Mississippi law applies. *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011) (holding that courts sitting in diversity apply "the applicable state law to determine whether contacts should be imputed to a parent company due to an . . . agency relationship"). Under Mississippi law, "the key to the concept of 'agency' is that the agent acts on the principal's behalf and is subject to the

principal's control." *Aladdin Constr. Co. v. John Hancock Life Ins. Co.*, 914 So. 2d 169, 175 (Miss. 2005) (quoting Restatement (Third) of Agency § 1.01).

In his initial response to Defendants' motions, Rush neither analyzed these elements nor offered any authority supporting his argument. Regardless, Rush has not established that an entity with sufficient minimum contacts in Mississippi acted on behalf of a moving Defendant while subject to that entity's control. *See Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 333 (considering similar Louisiana agency law and holding that "[t]hough Plaintiffs make a bald assertion that Biomeasure was Ipsen's actual agent, they offer no evidence to support an express authorization for Biomeasure to act as Ipsen's agent with regard to the RFA or Licensing Agreement"). The Court finds that Rush has not met his burden under an agency theory.

### 3. Alter-Ego Theory

Rush alternatively falls back to an alter-ego theory of personal jurisdiction, arguing that "STIHL entities operate as a unit and/or in concert[.]" Pl.'s Resp. [123] at 15 (capitalization altered). "[A] court which has jurisdiction over a corporation has jurisdiction over its alter egos." *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (5th Cir. 1985).

Because jurisdiction in this case is based on diversity of citizenship, the Court applies Mississippi law to this question. *Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 330 n.5. In Mississippi, "[c]ourts presume corporate separateness[.]" *Davenport v. HansaWorld USA, Inc.*, 23 F. Supp. 3d 679, 697 (S.D. Miss. 2014) (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). "'[T]he cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders.'" *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 978 (Miss. 2007) (quoting *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989)). "This rule applies 'whether

such shareholders are individuals or corporations.'" *Id.* (quoting *N.A. Plastics, Inc. v. Inland Shoe Mfg. Co.*, 592 F. Supp. 875, 877 (N.D. Miss. 1984)). Accordingly, under this doctrine, "the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Davenport*, 23 F. Supp. 3d at 697 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)) (internal quotation marks omitted).

That said, Mississippi will recognize an alter-ego relationship and attribute the subsidiary's contacts to the parent when the plaintiff demonstrates "(1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) . . . fraud or other equivalent misfeasance on the part of the corporate shareholder." *Canadian Nat'l Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (quoting *Penn Nat'l Gaming, Inc. v. Ratliff*, 954 So. 2d 427, 431 (Miss. 2007), *superseded by statute on other grounds*, Registered Agents Act, 2012 Miss. Laws Ch. 382, § 15, *as recognized in Purdue Pharma L.P. v. State*, 256 So. 3d 1, 6 (Miss. 2018)). These are referred to as the *Waltman* factors.

Under this standard, "[p]iercing the corporate veil of a subsidiary to reach the parent corporation is not 'lightly undertaken.'" *Buchanan*, 957 So. 2d at 978 (quoting *Johnson & Higgins of Miss. v. Comm'nr of Ins.*, 321 So. 2d 281, 285 (Miss. 1975)). Thus, Mississippi courts do not "disregard corporate identity *unless* it is shown that one corporation is a 'mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation.'" *Id.*

a.     STIHL AG

As an initial matter, to pierce a corporate veil there must be a subsidiary entity from which to impute contacts. *See Waltman*, 94 So. 3d at 1115. Rush does not allege that STIHL

13

AG has a subsidiary entity whose contacts would satisfy personal jurisdiction. Rush has failed to make a *prima facie* showing of jurisdiction over STIHL AG. STIHL AG would also be entitled to dismissal for the same reasons as the other German Defendants.[5]

                        b.      STIHL International, STIHL Holding, and ANDREAS STIHL

Rather than address the *Waltman* factors, Rush primarily relies on two points. First, he observes that the moving defendants are related. According to Rush, "STIHL Inc. is a wholly-owned subsidiary of STIHL [International]," "STIHL [International] is a wholly-owned subsidiary of ANDREAS STIHL," and "ANDREAS STIHL is a wholly-owned subsidiary of STIHL Holding." SAC [91] ¶ 13. Second, he notes that Defendants' public representations and financial reports show they work in concert, including "centralized" product development. Pl.'s Resp. [123] at 16.

Even assuming these assertions are true, they are not enough. As an initial point, within the Fifth Circuit, "court[s] begin[] with a presumption that a subsidiary, even a wholly-owned subsidiary, is independent of its parent company for jurisdictional purposes. This presumption can be overcome by clear evidence." *Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 329 (citation omitted).

---

[5] Although they take different forms, "'[q]uintessential' shotgun pleadings . . . fail to distinguish between the actions of named defendants." *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). Rush's SAC does just that in many key respects, lumping all Defendants together without explaining who did what. For example, he claims that "the actions of Stihl Southwest are dictated and controlled by co-defendants." SAC [91] ¶ 15. "This Court has repeatedly warned attorneys against such pleading practices" because they violate Federal Rule of Civil Procedure 8(a)(2). *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2015 WL 1482636, at *4 (S.D. Miss. Mar. 31, 2015) (collecting cases). Rush's use of shotgun pleading further diminishes his efforts to prove personal jurisdiction as to each individual Defendant.

And while clear evidence of an alter-ego relationship would suffice, Rush has neither addressed nor satisfied the *Waltman* factors that determine alter-ego status.[6] First, Rush does not allege any "frustration of . . . expectations regarding the party [to which] he looked for performance[.]" *Waltman*, 94 So. 3d at 1115. He likewise fails to address this issue in his response to Defendants' motions.

Second, Rush has not shown a "flagrant disregard of corporate formalities by the defendant corporation and its principals." *Id.* On this point, Rush's reliance on the STIHL entities' public representations and financial reports are unavailing. The Fifth Circuit has recognized that "website descriptions and SEC filings referring to a corporate parent and its subsidiaries as a singular company, without more, [are] 'insufficient to overcome the presumption of corporate separateness.'" *Diece-Lisa Indus.*, 943 F.3d at 251 n.13 (quoting *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) and citing *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 331–33 (5th Cir. 2014)). Indeed, "'consolidating the activities of a subsidiary into the parent's annual reports is a common business practice' and 'is allowed by both the Internal Revenue Service and the Securities and Exchange Commission.'" *Waltman*, 94 So. 3d at 1118 (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678–79 (E.D. Cal. 1995)).

More generally as to the formalities prong, Rush says ANDREAS STIHL, the German Defendants, STIHL Inc., and STIHL Southwest have "common management, business

---

[6] Rush pleaded the alter-ego theory in his SAC and then raised it in his response to Defendants' personal-jurisdiction motions. It was therefore incumbent upon him to argue his point under the applicable law, which he failed to do. He then attempted to backfill his position by seeking leave to file a sur-reply in which he mentions *Buchanan*. *See* Pl.'s Mot. [128] at 5. That motion is addressed below, but even the proposed sur-reply stops short of fully addressing *Waltman*, and Rush offers no nonconclusory and non-controverted facts that would allow the Court to pierce the corporate veil.

operations, purpose, customers, supervision, and ownership." SAC [91] ¶ 10. These are mere

conclusory assertions that receive no weight. *Panda Brandywine Corp.*, 253 F.3d at 869.

Moreover, Rush does not identify any individual who is common to these entities. Nor are these

assertions unrebutted; Defendants offer substantial record evidence of the measures taken to

maintain corporate formalities. *See* Strzelczyk Decl. [104-1] ¶¶ 25–67 (asserting how

ANDREAS STIHL maintains corporate formalities with other entities); Brandspigel Decl. [104-

2] ¶¶ 7–27 (asserting how STIHL, Inc., maintains corporate formalities with other defendants);

Brittain Decl.[104-3] ¶¶ 7-33 (asserting how STIHL Southwest maintains corporate formalities

with other entities).

Indeed, the STIHL corporate structure is similar to ones Mississippi courts have refused

to pierce. In *Index Drilling Co. v. Williams*, the Mississippi Supreme Court held that "related

activities of these five corporations would not warrant disregard of their separate corporate

entities" despite common ownership, name, and operations. 137 So. 2d 525, 528 (Miss. 1962)

(quoted in *Charter Oak Fire Ins. Co. v. B.J. Enters. of Miss., LLC*, 156 So. 3d 357, 364 (Miss.

Ct. App. 2014)); *see also Arnoult v. CL Med. SARL*, No. 1:14-CV-271-KS-MTP, 2015 WL

5554301, at *7 (S.D. Miss. Sept. 21, 2015) (rejecting alter-ego-based jurisdiction because the

evidence demonstrated only that the defendant entities were "two of a family of companies all

operating to manufacture and distribute [medical] devices").

The final factor requires proof that STIHL, Inc.—the entity that manufactured the

chainsaw and placed it in the stream of commerce—is a "mere instrumentality" of the moving

Defendants or is "used in fraud." *Buchanan*, 957 So. 2d at 978. Rush's only allegation

mentioning fraud says that treating the entities separately "would sanction a fraud[.]" SAC [91]

¶ 10. But Rush provides no particularized facts stating plausible, nonconclusory allegations of

the ostensible fraud.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake.").  Again, "the prima-facie-

case requirement does not require the court to credit conclusory allegations[.]"  *Panda*

*Brandywine Corp.*, 253 F.3d at 869.

Rush was required to make "*particularized* allegations demonstrating the applicability of

the piercing doctrine to the facts of the case."  *Waltman*, 94 So. 3d at 1116 (emphasis added).

Thus, accepting as true the uncontroverted, nonconclusory allegations in Rush's SAC, he has

fallen short of making a *prima facie* showing of personal jurisdiction over the moving

Defendants under an alter-ego theory.  And absent an alter-ego relationship, he has further failed

to make a *prima facie* showing that ANDREAS STIHL or the German Defendants have

minimum contacts with Mississippi such that due process would allow the Court to exercise

personal jurisdiction.  But as discussed below, Rush seeks discovery to fill in the holes.

III.    Other Pending Motions

A.      Rush's Motion for Leave to File a Sur-Reply [139] and Related Motions to Seal
        [130, 132, 134, 141]

Rush seeks leave to file a sur-reply to ANDREAS STIHL's motion to dismiss because,

after briefing closed, ANDREAS STIHL "produced the alleged 'License Agreement' [that] made

the basis of ANDREAS STIHL's 'Mere Licensor' defense."  Pl.'s Mot. [139] at 1.  He also seeks

leave to file his proposed sur-reply and the agreement under restricted status.  Pl.'s Mots. [130,

132, 134, 141].

Local Uniform Civil Rule 7(b)(4) permits only responses and replies.  Indeed, it is well

established that the Rule "does not contemplate the filing of a sur-reply."  *Benefield v. Lockhart*,

No. 1:15-CV-00190-HSO-JCG, 2016 WL 9782113, at *1 (S.D. Miss. Aug. 1, 2016).  "'Leave of

court is [therefore] required to file an additional brief because the movant is generally entitled to

file the last pleading.'" *Id.* (quoting *Prater v. Wilkinson Cty.*, No. 5:13-CV-23-DCB-MTP, 2014 WL 5465372, at *3 (S.D. Miss. Oct. 28, 2014)).  A court may grant leave to file a sur-reply if "the movant's rebuttal raises new legal theories or attempts to present new evidence at the reply or rebuttal stage." *Elwood v. Cobra Collection Agency*, No. 2:06-CV-91-KS-JMR, 2006 WL 3694594, at *7 (S.D. Miss. Dec. 14, 2006) (citing *Murray v. TXU Corp.*, No. 3:03-CV-0888-P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005)).

Here, ANDREAS STIHL's reply raised no new legal issues and offered no new evidence. And while ANDREAS STIHL did provide the purported license agreement after briefing closed, Rush's proposed sur-reply has little to do with it.  Instead, he spends most of his brief revisiting and attempting to bolster his original arguments.  *See, e.g.*, Pl.'s Proposed Sur-Reply [139-1] at 6 (citing—for the first time—cases addressing agency).  He also adds arguments that he neither pleaded in his SAC nor argued in his response to ANDREAS STIHL's motion to dismiss.  For example, he now argues—with no supporting record evidence or legal analysis—that ANDREAS STIHL is subject to personal jurisdiction as a successor corporation.  *See id.* at 4.

As for the licensing agreement, Rush is at least correct that he obtained it after briefing closed.  He is also correct that the document was not attached to Defendants' motions, though they offered declarations describing its content.  *See, e.g.*, Strzelczyk Decl. [102-1] ¶¶ 85–89. That said, the proposed sur-reply offers little substance regarding the agreement, and, as noted, there was nothing new in ANDREAS STIHL's reply.  So, the Court will not permit Rush to file the proposed sur-reply.

There are, however, documents that should be added to the record.  First, the Court agrees that the agreement attached to the sur-reply is the best evidence of its contents.  For that and other reasons, the Court grants Rush's unopposed motion [134] to file the proposed sur-reply

and the agreement under restricted status, making the exhibit part of the record.  Second, no

Defendant opposed Rush's motion seeking to file a deposition transcript under restricted status

[141], so it too is granted.  Finally, because the Court denies Rush's motion for leave to file a

sur-reply, his motions to file the agreement as attachments to the proposed sur-reply [130, 132]

are denied as moot.

      B.      Discovery-Related Motions [107, 121, 124]

The parties also filed various motions relating to discovery.  First, ANDREAS STIHL

and the German Defendants collectively moved for a stay of discovery pending the Court's

ruling on their motions to dismiss.  That motion for a stay [107] is now moot.

In two separate motions, Rush seeks jurisdictional discovery as to ANDREAS STIHL

and the German Defendants.  When a party seeks jurisdictional discovery, he must first make "a

preliminary showing of jurisdiction."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429

(5th Cir. 2005).  This showing requires "factual allegations that suggest with reasonable

particularity the possible existence of the requisite" facts.  *Id.*  The plaintiff must "state how the

discovery he requested would change the jurisdictional determination."  *Monkton Ins. Servs.,*

*Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).

Rush has failed to make a *prima facie* showing of jurisdiction as to ANDREAS STIHL or

the German Defendants.  Whether he has made a preliminary showing of jurisdiction sufficient

for jurisdictional discovery must be addressed separately as to the two pending motions for

discovery.

      1.      The German Defendants [124]

Rush's motion seeking discovery from the German Defendants treats them all the same,

arguing that he needs discovery to address the factual assertions in the submitted declarations.

Pl.'s Mot. [124] at 2.  The German Defendants are not, however, similarly situated with respect to discovery.

As discussed before, neither STIHL AG nor STIHL Holding existed when the subject chainsaw was designed and manufactured.  *See* Defs.' Mem. [105] at 6 (citing Strzelczyk Decl. [104-1] ¶¶ 27, 42); Pl.'s Resp. [123] at 9; SAC [91] ¶ 26.  Rush therefore wants discovery to determine whether they can be hailed into this Court on a successor-liability theory.  Pl.'s Resp. [123] at 20.

Rush has not demonstrated that he is entitled to that discovery for the same reasons he failed to establish a *prima facie* showing of personal jurisdiction:  (1) the SAC is in many respects a shotgun pleading as to these Defendants; (2) Rush failed to address or analyze the legal standards applicable to his successor-liability theory; (3) Rush offers no particularized facts supporting this theory, like the name of the predecessors or their alleged minimum contacts in Mississippi; and (4) Rush did not specifically plead a successor-liability claim.

On top of these issues, the parties seem to agree that ANDREAS STIHL designed the chainsaw and STIHL, Inc., manufactured and either distributed or sold it.  And there are no nonconclusory factual allegations showing with "reasonable particularity the possible existence of the requisite" facts establishing STIHL AG or STIHL Holding's involvement in the design, distribution, or sale of the chainsaw at issue.  *Fielding*, 415 F.3d at 429.  Rush is not, therefore, entitled to jurisdictional discovery as to STIHL AG or STIHL Holding.  *Id.* (affirming denial of jurisdictional discovery); *see also Covington Marine Corp. v. Xiamen Shipbuilding Indus. Co.*, 504 F. App'x 298, 303 (5th Cir. 2012) (same); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857–58 (5th Cir. 2000) (same).  And as a result, those parties are dismissed for lack of personal jurisdiction.

STIHL International is different because it did exist when this chainsaw was sold. But the SAC contains no averments specific to this Defendant other than those found in Paragraph 7. That Paragraph tracks the allegations against the other German Defendants, averring that STIHL International "directs the activity, manufacturing, and sales of regional foreign subsidiaries in North America (STIHL, Inc.)" and "has conducted business in Kemper County by way of manufacture, design, delivery, control and sale of its gas[-]powered chainsaws to residents of Kemper County, Mississippi." SAC [91] ¶ 7; *see also id.* ¶¶ 5, 6 (making similar allegation that STIHL AG and STIHL Holding directed others and "conducted business in Kemper County by way of manufacture, design, delivery, and sale of its gas-powered chainsaws to residents of Kemper County, Mississippi"). Absent underlying facts, these are conclusory assertions, and Rush has not rebutted STIHL International's substantial record evidence to the contrary. *See Panda Brandywine Corp.*, 253 F.3d at 869; *see also Wyatt*, 686 F.2d at 283 n.13.

Rush does say that STIHL International is a subsidiary of ANDREAS STIHL. *See* SAC [91] ¶ 7. Rush further alleges that STIHL, Inc., is a subsidiary of STIHL International. *Id.* ¶ 13. These are nonconclusory assertions, but the parent/subsidiary relationship does not alone present a basis for discovery. *See Kelly*, 213 F.3d at 857–58 (affirming denial of jurisdictional discovery to pursue alter-ego theory as to subsidiaries).

More generally, Rush argues as to all Defendants that he should be allowed to test the assertions in their declarations. But the Fifth Circuit rejected a similar argument in *Kelly*:

> Appellants offer nothing to support their conclusory assertion they could have established evidence to support their alter ego theory had discovery not been restricted. The declarations of the Royal Dutch, Shell Transport, and Shell Oil Company corporate representatives negate the possibility that, by virtue of their ownership of Shell Petroleum Inc., Royal Dutch and Shell Transport are the alter egos of Shell Oil Company. Appellants offer no basis whatsoever to support an inference that those corporate representatives' deposition testimony would contradict their sworn declarations. . . . Accordingly, the district court did not

> abuse its discretion by dismissing Royal Dutch and Shell Transport without
> allowing additional jurisdictional discovery.

213 F.3d at 857–58 (also noting that plaintiff did not diligently pursue discovery). ‼

Given the lack of individualized and particularized facts about STIHL International; the absence of any defendant-specific arguments about the need for discovery or what specifically Rush hopes to find as to STIHL International; Defendants' declarations; and the parties' understandings regarding who designed, manufactured, and distributed/sold the chainsaw; Rush has not made "a preliminary showing of jurisdiction." *Fielding*, 415 F.3d at 429.  He is not, therefore, entitled to jurisdictional discovery as to STIHL International.  *Id.*; *see also Covington Marine Corp.*, 504 F. App'x at 303; *Kelly*, 213 F.3d at 857–58.  STIHL International is dismissed.

### 2. ANDREAS STIHL [121]

The more difficult question is whether Rush has shown enough to allow discovery as to ANDREAS STIHL.  Whether to allow discovery falls within the Court's discretion, and in this instance, it should go forward.  The Court fully acknowledges the factual statements in ANDREAS STIHL's declarations and the difficulty Rush may ultimately have showing an agency or alter-ego relationship.  But the license agreement that is now in the record raises some questions.  For starters, the brevity of the agreement makes the Court wonder whether it is the only relevant agreement between these entities.  If there are others, perhaps there is evidence showing that ANDREAS STIHL had more of a connection to Mississippi or more control over STIHL, Inc.  Additionally, the agreement also starts with the words, "on cooperation in research and development," suggesting some coordination.  Agreement [128-1] at 16.  And while

ANDREAS STIHL argues that the agreement is non-exclusive, that is not apparent from the document.[7]

The relevant manual also contains a trademark owned by ANDREAS STIHL and is copyrighted by ANDREAS STIHL. *See* Manual [123-3] at 3; Trademarks [123-11] at 2. Finally, while the EPA warranty came later and addressed an apparently irrelevant issue, it may be reflective of the relationship between ANDREAS STIHL and STIHL, Inc. Rush should be allowed to explore these and other relevant issues.

Obviously, the Court is not yet convinced that Rush has established personal jurisdiction over ANDREAS STIHL. But the question for now is whether he has offered "factual allegations that suggest with reasonable particularity the *possible* existence of the requisite" facts. *Fielding*, 415 F.3d at 429 (emphasis added). Although a close call, the Court concludes that he has. Accordingly, ANDREAS STIHL's Motion to Dismiss [102] is denied without prejudice. Rush's Motion for Discovery [121] is granted. He will be allowed to depose Raphael Strzelczyk and Jacob Brandspigel—the only discovery he specifically requested.[8]

---

[7] That said, the parties will need to address whether exclusivity matters. Although ANDREAS STIHL has argued that non-exclusive agreements do not create personal jurisdiction, it has not addressed whether exclusive agreements do, a point Rush presses without offering authority. There are at least some cases suggesting that the distinction matters not. For example, in *Seiferth*, the court did not distinguish between the two. 472 F.3d at 275; *see also New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017) ("To be sure, the mere existence of an exclusive license does not support a finding of specific jurisdiction."). If discovery suggests that the agreement was exclusive, then the parties must address this question.

[8] Rush has already deposed STIHL, Inc.'s declarant Jacob Brandspigel, but it is not clear from the parties' arguments or the record whether he was deposed with respect to the agency and alter-ego theories related to ANDREAS STIHL. If so, then additional discovery on the same issues would not be warranted. If the parties cannot agree whether an additional deposition is warranted, ANDREAS STIHL and/or STIHL, Inc., may file a motion for a protective order.

V.      Conclusion

The Court has considered all arguments.  Those not addressed would not change the outcome.  For the reasons stated, the Court rules on the pending motions as follows:

- ANDREAS STIHL's motion to dismiss [102]:  **DENIED** without prejudice;

- The German Defendants' motion to dismiss [104]:  **GRANTED**;

- Defendants' motion to stay discovery [107]:  **DENIED** as moot;

- Rush's motion for discovery [121]:  **GRANTED**;

- Rush's motion for discovery [124]:  **GRANTED IN PART** (as to ANDREAS STIHL), **DENIED IN PART** (as to STIHL International, STIHL Holding, and STIHL AG);

- Rush's motion for leave to file a sur-reply [139]:  **DENIED;**

- Rush's motion to file document under restricted status [130]:  **DENIED** as moot;

- Rush's motion to file document under restricted status [132]:  **DENIED** as moot;

- Rush's motion to file document under restricted status [134]:  **GRANTED**; and

- Rush's motion to file document under restricted status [141]:  **GRANTED**.

Finally, Rush is given 60 days to conduct the requested discovery.  ANDREAS STIHL will have 30 days from that date, or the date of receipt of the last deposition transcript (whichever is sooner), to refile its motion to dismiss if appropriate.

**SO ORDERED AND ADJUDGED** this the 17th day of March, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE